UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 09-65895

CLEMENTS MANUFACTURING                              Chapter 7
 LIQUIDATION COMPANY, LLC,
                                                    Judge Thomas J. Tucker
                    Debtor.
_____/

**OPINION REGARDING THE CHAPTER 7 TRUSTEE'S
SECOND SETTLEMENT MOTION**

**I. Introduction**

This case is before the Court on the Chapter 7 Trustee's motion entitled "Motion to

Compromise and Settle Adversary Case Nos. 10-01623-TJT and 10-07341-TJT" (Docket # 115,

the "Motion").  In the Motion, the Trustee seeks the Court's approval of the Trustee's proposed

settlement relating to two pending adversary proceedings (Adv. Nos. 10-6123 and 10-7341).  The

proposed settlement agreement is between the Trustee and several parties that this opinion will

refer to as the "Zaima Entities," namely, Harold Zaima, Zaima Family LLC, Sakoma, LLC, and

Kensa de Honduras S. De R.L.

Several creditors objected to the Motion.  Objections were filed jointly by THB America,

LLC ("THB") and Tianhai Electric North America, Inc. ("TENA"),[1] and by two other creditors

— Odyssey Electronics, Inc.[2] and David Crawford.[3]  The Trustee filed a reply in support of the

---

[1]  Docket # 119.

[2]  Docket # 124.

[3]  Docket # 120.

Motion.[4]  The Court then held a hearing, and ordered certain further proceedings,[5] including the filing of a written, competing settlement offer by THB and TENA (these two parties, collectively, are sometimes referred to in this opinion as the "TENA Entities").  THB and TENA then filed their competing settlement offer (the "TENA Settlement Offer"), and a statement in support of it.[6]

The Court then held a status conference regarding the Motion and the TENA Settlement Offer.  At that time, the Trustee informed the Court that he had rejected the TENA Settlement Offer, and still wanted the Court to grant the Trustee's Motion and approve the proposed settlement with the Zaima Entities.  The Court allowed the Trustee and the Zaima Entities to file written responses to the statement THB and TENA had filed in support of the TENA Settlement Offer.[7]  After those responses were filed,[8] and the Court took the Motion under advisement.

The Court has carefully considered everything filed by the parties regarding the Trustee's Motion and the TENA Settlement Offer, as well as the oral arguments of the parties.  For the reasons stated in this opinion, the Court will *conditionally* deny the Trustee's Motion.  The Court's ruling finds the TENA Settlement Offer to be a better offer, and gives preference to it over the Trustee's proposed settlement.  The Court will allow THB and TENA 14 days to renew

---

[4]  Docket # 129.

[5]  *See* Order at Docket # 136.

[6]  Docket ## 137 (TENA Settlement Offer), 138 (statement in support of TENA Settlement Offer).

[7]  *See* Order at Docket # 140.

[8]  Docket ## 141, 143.

the TENA Settlement Offer. If they do so, the Court will deny the Trustee's Motion. But if the TENA Settlement Offer is not renewed, the Court will grant the Trustee's Motion and approve the Trustee's proposed settlement, with certain revisions described below.

## II. Jurisdiction

This Court has subject matter jurisdiction over the case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and (b)(1), and Local Rule 83.50(a) (E.D. Mich.). A motion to approve a settlement agreement is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O). *See In re High Tech Packaging, Inc.*, 397 B.R. 369, 371 (Bankr. N.D. Ohio 2008); *In re Parkview Hosp.–Osteopathic Med. Ctr.,* 211 B.R. 603, 607 (Bankr. N.D. Ohio 1997); *In re Dow Corning Corp.*, 192 B.R. 415, 421 (Bankr. E.D. Mich. 1996); *In re Frye*, 216 B.R. 166, 170 (Bankr. E.D. Va. 1997).

This contested matter also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within this category in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This matter is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## III. Standards for approval or disapproval of a settlement agreement

In its opinion in a prior case, *In re McInerney*, 499 B.R. 574, 581-83 (Bankr. E.D. Mich. 2013), this Court stated the standards and factors relevant to deciding whether to approve a proposed settlement. The Court reiterates what it said in the *McInerney* case about this subject, and will apply that to the Trustee's Motion in this case:

3

"Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *HSBC Bank USA, N.A. v. Fane* (*In re MF Global Inc.*), 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012) (citing *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996)); *see also Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citation omitted) (Bankruptcy Act) ("Compromises are 'a normal part of the process of reorganization.' In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."); *In re Dewey & LeBoeuf LLP,* 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012)(citing *MF Global Inc.*, 466 B.R. at 247; *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 455 (2d Cir.2007)("stating that settlements are important in bankruptcy because they 'help clear a path for the efficient administration of the bankrupt estate'"); and10 *Collier on Bankruptcy* ¶ 9019.01 at 9019–2 ("highlighting that 'compromises are favored in bankruptcy'")); *Buckeye Check Cashing, Inc. v. Meadows* (*In re Meadows*), 396 B.R. 485, 499 (B.A.P. 6th Cir. 2008) (citing *In re Cormier*, 382 B.R. 377, 400–01 (Bankr. W.D. Mich. 2008))("Settlements in bankruptcy cases are favored by law."); *In re West Pointe Properties, L.P.*, 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000) (quoting *In re Edwards*, 228 B.R. 552, 568–69 (Bankr. E.D. Pa. 1998))("'[I]t is well accepted that compromises are favored in bankruptcy in order to minimize the cost of litigation to the estate and expedite its administration, and that the approval of a compromise is within the sound discretion of the bankruptcy judge.'").

"At the same time, however, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court." *TMT Trailer*, 390 B.R. at 424 (citation omitted).

In *Olson v. Anderson* (*In re Anderson*), 377 B.R. 865, 870-71 (B.A.P. 6th Cir. 2007), *abrogated on other grounds by Schwab v. Reilly*, 560 U.S. 770 (2010)(footnotes and citations omitted), the court described in detail the "[s]tandard for approval or disapproval of a settlement agreement":

4

Rule 9019 of the Federal Rules of Bankruptcy Procedure provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The rule offers no guidance as to the criteria to be used in evaluating whether a settlement should be approved, but courts uniformly have drawn from the language of the Supreme Court's decision in *TMT Trailer Ferry* in establishing a "fair and equitable" threshold for settlement approval. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). Although the *TMT Trailer Ferry* case was decided under the Bankruptcy Act, "its principles have been broadly held applicable to settlements under the Bankruptcy Code." 2 *Norton Bankr.L. & Prac.2d* § 41:10 (2007). Many Rule 9019 opinions have relied on *TMT Trailer Ferry* "both for the substantive requirement that settlement represent a fair compromise of disputed issues, and for the requirement that such settlement be preceded by adequate inquiry." *Id.*

The Sixth Circuit Court of Appeals has held that **"the bankruptcy court is charged with an affirmative obligation to** apprise itself of the underlying facts and to **make an independent judgment as to whether the compromise is fair and equitable."** *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir.1988) (emphasis added). **The court must weigh the conflicting interests of all relevant parties, "considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors."** *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988) (citation omitted). "A bankruptcy judge need not conduct a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only be apprised of the relevant facts and law so that he can make an informed and intelligent decision and set out the reasons for that decision." *Fishell v. Soltow (In re*

5

*Fishell*), 47 F.3d 1168, 1995 WL 66622, at \*3 (6th Cir. Feb.16, 1995) (unpublished table decision) (quoting *LaSalle Nat'l Bank v. Holland* (*In re Am. Reserve Corp.*), 841 F.2d 159, 163 (7th Cir.1987)); *see also TMT Trailer Ferry*, 390 U.S. at 437, 88 S.Ct. 1157 (holding that bankruptcy court must have the facts in order to make an informed and independent decision).

Although published Sixth Circuit case law on Rule 9019 settlements is relatively sparse, in unpublished decisions the Court of Appeals and Bankruptcy Appellate Panel have consistently reaffirmed their adherence to the "fair and equitable" standard. *See Lyndon Prop. Ins. Co. v. Katz*, 196 Fed.Appx. 383, 387 (6th Cir.2006); *Bard v. Sicherman* (*In re Bard*), 49 Fed.Appx. 528, 530 (6th Cir.2002); *In re Fishell*, 47 F.3d 1168, 1995 WL 66622, at \*3 (6th Cir. Feb.16, 1995) (unpublished table decision); *Cook v. Terlecky* (*In re Cook*), 336 B.R. 600, 2006 WL 13114, at \*3 (6th Cir. BAP Jan. 4, 2006) (unpublished table decision); *Porter Drywall Co. v. Haven, Inc.* (*In re Haven, Inc.*), 326 B.R. 901, 2005 WL 927666, at \*3 (6th Cir. BAP April 7, 2005) (unpublished table decision). Further, the vast majority of appellate courts that have addressed the issue have relied upon the same or similar criteria. No appellate court has rejected, either expressly or implicitly, the efficacy of this approach.

(Emphasis added). The four factors that courts generally consider in evaluating whether a compromise is "fair and equitable" are:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views.

*In re High Tech Packaging, Inc.,* 397 B.R. 369, 372 (Bankr. N.D. Ohio 2008)(citing *In re Fishell,* 47 F.3d 1168, 1995 WL 66622, at

> *3 (6th Cir.1995) (unpublished table decision); *Bard v. Sicherman (In re Bard),* 49 Fed. Appx. 528, 530 (6th Cir.2002)). "The trustee has the burden to establish that a motion to compromise is appropriate with respect to these considerations." *High Tech Packaging*, 397 B.R. at 372.

*McInerney*, 499 B.R. at 581-83.

## IV. Discussion

## A. Further background relevant to the Trustee's Motion

The Trustee's Motion seeks approval to settle the Trustee's claims asserted in the two pending, consolidated adversary proceedings (Adv. Nos. 10-6123 and 10-7341). The Court previously described many of the Trustee's claims in those adversary proceedings, and described the complex, February 29, 2008 transactions that gave rise to the Trustee's claims, in a lengthy opinion denying various motions for summary judgment. *Wells v. THB Am., LLC* (*In re Clements Mfg. Liquidation Co., LLC*), 521 B.R. 231 (Bankr. E.D. Mich. 2014) (the "Summary Judgment Opinion"). Rather than repeating it here, the Court incorporates by reference, into this opinion, its description of the Trustee's claims and the underlying transactions contained in the Summary Judgment Opinion.

After denying summary judgment, and after receiving substantial input from the parties, the Court ultimately decided to order separate trials of the many claims involved in the adversary proceedings. In an order filed on June 29, 2015, the Court ordered that the first trial would be limited to:

> a trial on the following claims by the Trustee: Adversary Proceeding No. 10-07341, Chapter 7 Trustee's Crossclaims, Count VII (Avoidance of Transfers in Honduras APA Against Zaima Entities); Count VIII (Avoidance of Transfers in Honduras APA Against Zaima Entities); and Count IX (limited to Avoidance of

7

Transfers in Honduras APA Against Zaima).[9]

On August 31, 2015, the Court held a final pretrial conference, and entered a final pretrial order, with respect to the trial of these claims by the Trustee. As indicated by the final pretrial order, a primary focus of the first trial was to be the Trustee's claim that the bankruptcy estate has the right to collect on a $1.84 million promissory note that was given by TENA's predecessor in interest,[10] and made payable to Kensa de Honduras (one of the Zaima Entities). The Trustee claims that the rights as payee under this promissory note belong to the bankruptcy estate, rather than to Kensa de Honduras, either because the note should have been made payable to the bankruptcy Debtor, or in the alternative, because the giving of such note to Kensa de Honduras was an avoidable fraudulent transfer.

The August 31, 2015 final pretrial order described the Trustee's claims, and the defenses of the Zaima Entities, that were to be the subject of the first trial. The following descriptions of the claims and defenses were provided by the Trustee and by the Zaima Entities, respectively:

## II.      Trustee's Claims

Defendants Harold Zaima and Kensa de Honduras received fraudulently transferred funds and other consideration in the form of the Promissory Note from the purchase of assets of the Debtor as part of the consolidated transactions on February 29, 2008.

As of the date of the transactions, the Debtor was insolvent.

The Debtor owned the assets transferred to Kensa de Honduras and

---

[9]  Order Regarding Separate Trials and Related Matters (Docket # 241 in Adv. No. 10-6123).

[10]  TENA is now deemed the payor on the promissory note. The original payor was CAE US Holdings, Inc. ("CAE US"). The CAE US entity later merged with TENA, with TENA as the surviving entity. (*See* Summary Judgment Opinion, 521 B.R. at 235, 252; *see also* Tr. of December 7, 2016 hearing (Docket # 145) at 27, 66-67).

then to THB de Honduras prior to the transactions on February 29, 2008.

With the avoidance of the fraudulent transfer, the Trustee is entitled to recover sums and other consideration received by Kensa de Honduras and Zaima, including the Promissory Note in the amount of $1,840,000.

## III.     Defenses of Zaima and Kensa de Honduras

The Honduras APA and the $1,840,000 Promissory Note were part of a larger, integrated transaction of which certain assets of Kensa de Honduras, Kensa de Mexico, Sakoma and Old Kensa ("Debtor") were purchased by THB Honduras and THB America, of which CAE US ultimately purchased an 80% ownership interest, for total consideration of over $14.5 million. The amounts allocated to each of the entities which were part of the integrated transaction were properly allocated based on value of assets purchased.

The $1,840,000 Promissory Note made payable to Kensa de Honduras ("Promissory Note) is not property of the Debtor's bankruptcy estate, nor does it constitute a voidable transfer. The Promissory Note was properly made payable to Kensa de Honduras and not the Debtor.

The Unit Purchase Agreements and related Asset Purchase Agreements comprising the larger, integrated transaction, including the Honduras APA, were arms-length transactions for reasonably equivalent value. The Debtor, Kensa de Honduras and Kensa de Mexico were all separate legal entities and each entity obtained separate audited financial statements, which were audited on an annual basis.

The Promissory Note was made payable to Kensa de Honduras as a proportional allocation of payment for Kensa de Honduras's transfer of certain assets in the Honduras APA and the larger, integrated transaction. The amount of the purchase price given to each signatory of the Honduras APA and within the larger integrated transaction, including both Kensa de Honduras and the Debtor, was allocated according to the value of the assets ultimately purchased by CAE as part of the larger, integrated transaction. This allocation was in accordance with the assets residing in and owned by each entity based on the financial

9

statements of each entity. Doeren Mayhew was consulted on the valuation and allocation of the subject assets and Doeren Mayhew's allocation recommendation was implemented.

At closing, the Debtor received much greater than reasonably equivalent value for its transfer of certain assets in the Honduras APA and the integrated transaction. Kensa de Honduras in fact received less than reasonably equivalent value for its transfer of certain of assets in the Honduras APA. As such, the Promissory Note made payable to Kensa de Honduras does not constitute a voidable transfer and is not otherwise property of the bankruptcy estate. The rights to enforce the terms of the Promissory Note belong solely to Kensa de Honduras and Kensa de Honduras is entitled to recovery under the terms of the note from the TENA Defendants. Kensa de Honduras's claims against TENA to enforce the Promissory Note should be remanded to the Oakland County Circuit Court for either jurisdictional reasons or under principles of abstention for trial.[11]

Before the first trial was to have occurred, the Trustee informed the Court that he had reached a settlement. Ultimately, the Trustee filed the present Motion, and the litigation over the Motion ensued, as described in Part I of this opinion.

## B. The Trustee's proposed settlement

The Trustee's Motion seeks approval of the Trustee's settlement with the Zaima Entities. The main terms of that settlement, in substance, are as follows.

The Trustee will dismiss and release all of the bankruptcy estate's claims against the Zaima Entities in Adv. Nos. 10-6123 and 10-7341, including the Trustee's claim regarding the $1.84 million promissory note. All of the claims between the Zaima Entities and the Chinese

---

[11] Final Pretrial Order Regarding Trial on Fraudulent Transfer Claims Against Harold Zaima and Kensa de Honduras, filed August 31, 2015, at 3-5 (Docket # 63 in Adv. No. 10-7341 and Docket # 246 in Adv. No. 10-6123).

Entities[12] in Adv. No. 10-7341 will be remanded[13] to the Oakland County Circuit Court. Meanwhile, all of the claims asserted by the Trustee against the Chinese Entities in the two adversary proceedings will be "held in abeyance" by this Court, to be dismissed with prejudice after completion of the Oakland County litigation.

In addition, the Trustee will "permit and allow," and not object to, Harold Zaima's proof of claim filed in this case, as a general unsecured claim in the amount of $471,250.00.

In exchange, the Zaima Entities will "assign" to the Trustee 20% "of any settlement or judgment funds" they obtain from their claims against the Chinese Entities in the Oakland County litigation, with such 20% amount not to exceed $300,000.00. (Such claims include a claim to collect on the $1.84 million promissory note discussed above, and several other claims.)

And the Zaima Entities will "release any interest" they hold in the "interpleaded funds from the Sanilac County Circuit Court." These funds total roughly $132,000, and are being held by the Trustee, subject to further order, under this Court's order entered on May 23, 2011.[14] The funds are the proceeds of a garnishment action brought by one of the Debtor's creditors in the Sanilac County Circuit Court. The Trustee claims that these funds are property of the bankruptcy estate; THB and TENA have argued that these funds belong to them.

## C. The competing TENA Settlement Offer

---

[12] As used in this opinion and in the Motion, "Chinese Entities" means China Auto Electronics Group Ltd, Henan Tianhai Electric Co., Ltd., TENA, Hebi Tianhai Huanqiu Electric Company, Ltd., THB, and Tianhai Electric Group Corporation.

[13] That adversary proceeding was a case that originated in the Oakland County Circuit Court, but was removed to this Court by THB and TENA.

[14] Docket # 78.

11

The TENA Settlement Offer, in substance, contained the following main terms.[15]  First, THB and TENA will immediately waive any claim to the Sanilac County interpleaded funds, and will waive any right to receive any distribution from the Debtor's bankruptcy estate.  (THB and TENA filed proofs of claim in the amounts of $1,000,235.00 (Claim No. 5) and $6,222,589.72 (Claim No. 4), respectively, for a total of $7,222.824.72).

Second, TENA will promptly deposit into an interest-bearing escrow account the sum of $300,000.00 (the "Escrowed Funds").  The Trustee must litigate to final judgment its claims against the Zaima Entities regarding the $1.84 million promissory note (the "Promissory Note"). If and to the extent the Trustee "obtains a Final Judgment recovering the Promissory Note as a voidable transfer or otherwise as property of the Debtor's bankruptcy estate," the Escrowed Funds will be paid to the bankruptcy estate in full satisfaction of the Promissory Note.  Those funds will be paid in full if the Trustee recovers the Promissory Note in full, or "pro rata" if the Trustee recovers the Promissory Note in part.  To the extent not paid to the Trustee under these terms, the Escrowed Funds will be returned to TENA.

Finally, the Trustee will waive all claims against THB and TENA.

**D.  The Court's findings and conclusions about whether to grant the Trustee's Motion**

After carefully considering the arguments of the Trustee and the objecting parties, the Court has decided to conditionally deny the Trustee's Motion, as described below.

Upon review of all the relevant factors described in Part III of this opinion, the Court

---

[15]  The TENA Settlement Offer was filed at Docket # 137.  The TENA Settlement Offer was pending and made "irrevocable" from December 16, 2016 to March 20, 2017.  But the Trustee had rejected the offer as of January 11, 2017.  (Tr. of January 11, 2017 status conference (Docket # 148) at 3).

finds and concludes that as between the TENA Settlement Offer and the Trustee's proposed settlement, the TENA Settlement Offer is superior to, and of greater value and benefit to, the bankruptcy estate. Because of this, the Court will deny the Trustee's Motion *if* the TENA Settlement Offer is renewed by THB and TENA, in writing, within 14 days. But if the TENA Settlement Offer is no longer available — *i.e.*, if the TENA Settlement Offer is not renewed — the Court will approve the Trustee's proposed settlement, with certain revisions described below. The Court finds and concludes that this conditional-denial outcome is fair and equitable; represents a fair compromise of disputed issues; is reasonable; and is in the best interests of the bankruptcy estate.

### 1. The TENA Settlement Offer is superior to the Trustee's proposed settlement.

The Court is persuaded that the TENA Settlement Offer is better for the bankruptcy estate than the Trustee's proposed settlement, for the reasons argued by THB and TENA in their statement in support of the TENA Settlement Offer,[16] and particularly given the following considerations.

Under the TENA Settlement Offer, the bankruptcy estate would obtain the following benefits. First, the estate would be guaranteed to receive $300,000, from the Escrowed Funds TENA will deposit, if the Trustee prevails in the first trial against the Zaima Entities, in establishing the bankruptcy estate's right to the $1.84 million Promissory Note. And the Trustee has estimated that he has a 70-80% chance of prevailing on that claim.[17] And this result would

---

[16] Docket # 138.

[17] The Trustee's counsel made this estimate during the December 7, 2016 hearing. (Tr. (Docket # 145) at 33). The Zaima Entities disagree with the Trustee's assessment, and have argued that the Trustee is unlikely to prevail on this claim. (*See* Docket # 143 at 5-7). But the Court finds it appropriate

be obtained after conducting a two-day trial in this Court that the Trustee estimates will cost $15,000 to $25,000 in attorney fees, plus some unspecified amount of accountant fees for the Trustee's trial expert.[18] If we make the reasonable assumption that the additional accountant fees to try the Promissory Note claim will be $10,000, that would mean a total cost to the estate of $25,000 to $35,000 going forward to try a case that is 70-80% likely to yield a return of $300,000 to the estate. If we discount the $300,000 for a 70% chance of success, the result (on a cost-benefit analysis) is a likely net benefit to the bankruptcy estate from this part of the TENA Settlement Offer of *at least* $175,000 ($300,000 times .70 equals $210,000, minus $35,000 equals $175,000). And if we use the most favorable assumptions in the ranges above, the result is a likely net benefit to the bankruptcy estate of $215,000 ($300,000 times .80 equals $240,000, minus $25,000 equals $215,000).

Second, and regardless of the outcome of a trial on the Trustee's Promissory Note claim, under the TENA Settlement Offer, the bankruptcy estate would soon receive the entire $132,000 amount of the Sanilac County interpleaded funds, without any further expense of litigating with the TENA Entities over the right to those funds. TENA has asserted a claim to those funds,[19] but would give it up. The Zaima Entities have not made a claim to those funds, and for reasons described by the Court during the December 7, 2016 hearing, which the Trustee's counsel agreed with, it appears that the Zaima Entities already have waived any claim they might have made to

---

to accept the Trustee's assessment of his chances of prevailing, for purposes of ruling on the Trustee's Motion.

[18] *See id.* at 38.

[19] *See id.* at 72-74 (argument of counsel for THB and TENA).

14

those funds.[20]  Under the Trustee's proposed settlement with the Zaima Entities, by contrast, TENA will retain its claim to the Sanilac County funds, and the estate likely will have to spend attorney fees to litigate for those funds, with uncertain results.

A third benefit to the bankruptcy estate from the TENA Settlement Offer is that the pool of general unsecured claims in this case would, in effect, be reduced by $7.2 million, to roughly 29% of what the filed claims total currently.[21]  This is because of the offer by the TENA Entities to forego any distributions on their filed claims.  And this result would be achieved without any further expense for the estate.  Under the Trustee's proposed settlement, by contrast, there is no particular reason to expect this result, and certainly not without litigation expenses that might be significant.  The effect of this part of the TENA Settlement Offer would be to significantly increase the pro rata percentage of distributions that each of the remaining general unsecured creditors would receive in this case.  That is, of any funds distributed by the Trustee to the pool of general unsecured creditors, each such creditor would receive a much higher percentage of such funds, on a pro rata basis.  How much more money this would actually equate to for each creditor, of course, remains to be seen.  But under any scenario, this Court is unlikely to approve higher-priority administrative expenses, in the form of fees for the Trustee and the Trustee's professionals, in amounts that would leave general unsecured creditors without a meaningful

---

[20]  *See id.* at 8-10.

[21]  The claims register in this case shows 10 claims filed, of which 9 are unsecured claims which total $9,665,745.93.  This total includes the $7,222,824.72 in claims filed by THB and TENA., but does not include any claim amount for the claim filed by Harold Zaima, which was filed in an unliquidated amount.  If we assume a claim amount of $471,250.00 for Harold Zaima's claim (the amount Zaima has agreed to in the Zaima Entities' proposed settlement with the Trustee), then the total unsecured claims equal $10,136,995.93.  Of that total, the claims other than the $7,222,824.72 in claims filed by THB and TENA total $2,914,171.21, which equals 28.75% of the total unsecured claims.

distribution.[22]

Under the TENA Settlement Offer, the Trustee would retain all of his claims against the Zaima Entities, and could choose to litigate those or not, in whole or in part, depending on what the Trustee decides is best for the bankruptcy estate.

Based on the foregoing discussion, the likely net benefit to the bankruptcy estate from the TENA Settlement Offer would be in the range of $307,000 to $347,000 (consisting of the net benefit from the Escrowed Funds ($175,000 to $215,000) plus the Sanilac County interpleaded funds ($132,000)), plus a reduction of more than two-thirds in the pool of general unsecured claims to be paid.

These likely net benefits to the bankruptcy estate make the TENA Settlement Offer superior to the Trustee's proposed settlement with the Zaima Entities. Under the Trustee's proposed settlement, there is no reduction in the pool of general unsecured claims to be paid; there is no assurance that the estate will actually obtain any of the Sanilac County interpleaded funds or that it will do so without significant litigation expense; and it is rather speculative and unclear how much the estate would obtain under its 20%/$300,000 share in funds that are actually collected by the Zaima Entities on their claims against the Chinese Entities. Even if the Court assumes that the Zaima Entities will someday actually collect at least $1.5 million on their claims against the Chinese Entities, perhaps after a lengthy trial and appeals, so that the estate someday would get the maximum of $300,000, the net benefit to the estate of the TENA Settlement Offer is superior, because it is likely to bring in a net benefit substantially higher than

---

[22] The Trustee's counsel recognized this, in comments made during the December 7, 2016 hearing. (*See* Tr. (Docket # 145) at 100).

$300,000, plus a two-thirds reduction in the unsecured claims pool.

### 2. The Trustee's proposed settlement is superior to the alternatives available to the Trustee other than the TENA Settlement Offer.

Having concluded that the TENA Settlement Offer is superior to the Trustee's proposed settlement, the Court also concludes that if the TENA Settlement Offer is no longer available, then the Trustee's proposed settlement is superior to the other alternatives available to the Trustee. For that reason, the Court concludes that it should approve the Trustee's proposed settlement, *if* the TENA Settlement Offer is not renewed in response to the Court's ruling today.

The Court is persuaded, by the Trustee's arguments, that if the TENA Settlement Offer is no longer available, it is best for the bankruptcy estate for the Trustee to accept the Zaima Entities' deal, and thereby stop incurring all further risks and expenses of litigating the Trustee's claims in these adversary proceedings. The Trustee has a complex, difficult, and expensive task, and a substantial risk of losing to a great extent, if he litigates to judgment such claims.

As noted above, it is true that the Trustee estimates that he has a 70-80% chance of succeeding at trial on his claim that the bankruptcy estate, rather than the Zaima Entities, has the right to pursue collection against TENA on the $1.84 million Promissory Note. Even assuming that the Trustee is right about that, establishing that right offers no assurance that the estate will prevail against TENA's claimed defenses and offsets against the Promissory Note, or will do so at a cost that provides a net benefit to the estate.[23] In the absence of the TENA Settlement Offer, the Trustee's proposed settlement avoids the cost and risk of litigating such claims, and instead pushes that cost to the Zaima Entities, and obtains, at no further expense to the estate, a share of

---

[23] *See, e.g.*, Docket # 138 at 3-4 (brief discussion by TENA of its defenses and offsets to any claim against it on the Promissory Note).

any success the Zaima Entities have on any of their claims against the Chinese Entities.

In the absence of a settlement based on the TENA Settlement Offer, the Trustee's proposed settlement with the Zaima Entities, with the Court's revisions described below, will offer the best option for the bankruptcy estate, among the remaining alternatives.

### 3. Terms of the Court's conditional denial of the Trustee's Motion

As noted in footnote 15 of this opinion, above, the TENA Settlement Offer was pending and made "irrevocable" from December 16, 2016 to March 20, 2017. But it actually may have ended by January 11, 2017, because by that date the Trustee had rejected the offer. In any case, the Court will give THB and TENA an opportunity to renew the TENA Settlement Offer, by doing so in a writing that must be filed with 14 days. Any such renewed offer must be identical to, or clearly better than, the TENA Settlement Offer previously made, and it must be expressly made irrevocable until a date certain that is at least 60 days after the date on which the renewed offer is filed.

If THB and TENA file such a renewed offer, the Court will promptly enter an order denying the Trustee's Motion, and disapproving the Trustee's proposed settlement with the Zaima Entities. At that point, the Trustee will be left to decide whether to accept, and move for approval of, the renewed TENA settlement offer (or any negotiated improvement of such offer). If the Trustee chooses not to do that, the Court will schedule a conference to set a new trial date for the first trial to be held in the adversary proceedings.

If THB and TENA do *not* file a renewed settlement order as just described, the Court will promptly enter an order granting the Trustee's Motion and approving the Trustee's proposed settlement with the Zaima Entities, with certain revisions.

18

### 4. The Court's revisions to the Trustee's settlement terms

If the Court ultimately approves the Trustee's settlement with the Zaima Entities, it will be subject to several revisions. All of the Court's revisions are reflected in the redlined order document appended to this opinion, and in the clean version of that as-yet unsigned order, also appended to this opinion. The redline shows the changes the Court has made to the proposed order that the Trustee filed with his Motion. (The Court also has added all the footnotes in the revised order). There are many non-material changes reflected in this redline. During the December 7, 2016 hearing, the Trustee and the Zaima Entities agreed in substance to all of the material revisions.

The clean version of this order, appended to this opinion, is the order the Court will enter, if it turns out that the TENA Settlement Offer is not renewed.

## V. Conclusion

For the reasons stated in this opinion, the Court will enter an order today, conditionally denying the Trustee's Motion as described above.

**Signed on January 26, 2018**



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge

# APPENDIX TO OPINION

(Two unsigned order versions (redline and clean) not entered)

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                              Case No. 09-65895

CLEMENTS MANUFACTURING                              Chapter 7
 LIQUIDATION COMPANY, LLC,

                                                    Judge Thomas J. Tucker

      Debtor.
_____/

**ORDER GRANTING TRUSTEE'S MOTION TO COMPROMISE
AND SETTLE ADVERSARY ~~CASE~~ NOS. ~~10-06123-TJT~~10-06123 AND ~~10-07341-TJT~~10-07341**

This ~~matter having coming~~case is before the Court on the Trustee's ~~Motion~~motion entitled "Motion to Compromise and Settle ~~Estate's Interest in~~ Adversary Case Nos. 10-06123-TJT and ~~10-07341-TJT;~~10-07341-TJT" (Docket # 115, the "Motion").  Notice of the Motion ~~having been~~was served on all parties ~~pursuant to~~as required by Fed. R. Bankr. P. 2002 and L.B.R. 9014-1 (E.D.M.)~~; no objections having been filed thereto, or if filed, having been resolved; and the Court being otherwise fully advised in the premises;~~

~~IT IS HEREBY~~.  Objections were filed, and the Court held a hearing.  For the reasons stated by the Court in its written opinion filed January 26, 2018, the Court enters this Order.

IT IS ORDERED that the Trustee's Motion ~~to Compromise and Settle Estate's Interest in Adversary Case Nos. 10-06123-TJT ("Receivables Adversary") and 10-07341-TJT ("Oakland County Case Adversary")~~ is granted~~;~~, subject to the terms of this Order.

IT IS FURTHER ORDERED that Chapter 7 Trustee, Charles L. Wells, III, is authorized to compromise and settle all causes of action asserted by the Estate of Debtor Clements Manufacturing Liquidation Company L.L.C. (hereinafter ~~collectively~~ "Trustee~~"~~" or ~~"Estate"~~"Estate") against Harold Zaima, Zaima Family LLC, Sakoma LLC and Kensa de Honduras S. de R.L. ("Zaima Entities") in Adversary Nos. 10-06123-TJT (the ~~Receivables~~"Receivables Adversary~~")~~") and 10-07341-TJT (the ~~Oakland~~"Oakland County Case Adversary~~")~~") on all of the terms and conditions of the Settlement and Release Agreement attached as Exhibit 5 to the Trustee's Motion (the "Settlement Agreement"), but subject to ~~Compromise~~the terms of this Order.[1]

IT IS FURTHER ORDERED that~~, as provided in said Settlement and Release Agreement~~:

_____
[1]  To the extent of any conflicts between the Settlement Agreement and this Order, the terms of this Order will govern.

A.      All causes of action, including all counts, claims, counterclaims and cross-claims, asserted by the Trustee against the Zaima Entities that are pending in the Receivables Adversary ~~(Adv. Pro. No. 10-06123-TJT)~~ and the Oakland County Case Adversary ~~(Adv. Pro. No. 10-07341-TJT) are hereby~~will be dismissed with prejudice.  Such dismissal will be accomplished by the entry of appropriate orders in each of the adversary proceedings.  The Trustee and the Zaima Entities must file, in each adversary proceeding, a stipulation to such dismissal, and must submit an appropriate proposed dismissal order.

B.      All claims and causes of action by and between the Zaima Entities and the Chinese Entities[2] in the Oakland County Case Adversary ~~(Adv. Pro. No. 10-07341-TJT)~~, including all counts, claims, and causes of action asserted therein, ~~are hereby~~will be remanded to the Oakland County Circuit Court and ~~shall~~will  resume in the Oakland County Circuit Court at Case No. 09-101450-CB ("OCCC Litigation").  Such remand to the Oakland County Circuit Court will be accomplished by the entry of an appropriate order in the Oakland County Case Adversary.  The Trustee and the Zaima Entities must file, in the Oakland County Case Adversary, a stipulation to such remand, and must submit an appropriate proposed remand order.

C.      All causes of action asserted by the Trustee against the Chinese Entities that are pending in the Receivables Adversary ~~(Adv. Pro. No. 10-06123-TJT)~~ and the Oakland County Case Adversary ~~(Adv. Pro. No. 10-07341-TJT) are hereby held in abeyance~~will be stayed pending entry of a final, non-appealable judgment as to the Zaima Entities' claims against the Chinese Entities in the ~~Oakland County Circuit Court Case No. 09-101450-CB ("OCCC Litigation")~~OCCC Litigation.  This stay will be accomplished by the entry of an appropriate stay order in each adversary proceeding.  The Trustee and the Chinese Entities must file, in each adversary proceeding, a stipulation to such stay, and must submit an appropriate proposed stay order. The entry of ~~this O~~the stay order ~~holding~~s, staying all of the Trustee's claims against the Chinese Entities ~~in abeyance shall~~, will have no impact on the OCCC Litigation, and ~~shall~~will have no claim- or issue-preclusive, res judicata, or collateral estoppel effect on the claims asserted by the Zaima Entities against the Chinese Entities in the OCCC Litigation.  Further, the OCCC Litigation ~~shall~~will be binding on the Trustee's claims.

---

[2]  As used in this Order, "Chinese Entities" means China Auto Electronics Group Ltd, Henan Tianhai Electric Co., Ltd., Tianhai Electric North America Inc., Hebi Tianhai Huanqiu Electric Company, Ltd., THB America LLC, and Tianhai Electric Group Corporation.

2

D.     ~~T~~Upon entry of this Order, the Zaima Entities ~~shall~~are deemed to assign to the Trustee/Estate 20% (twenty percent) of the gross amount[3] of any settlement or judgment funds obtained, recovered, and collected by the Zaima Entities against ~~China Auto Electronics Group Ltd, Henan Tianhai Electric Co., Ltd., Tianhai Electric North America Inc., Hebi Tianhai Huanqiu Electric Company, Ltd., THB America LLC, and Tianhai Electric Group Corporation ("Chinese~~the Chinese Entities~~")~~ in the OCCC Litigation, with such assignment not to exceed $300,000 (three hundred thousand dollars) of any settlement or judgment funds so obtained, recovered, and collected ("Assignment of Litigation Proceeds").

E.     Upon entry of a final, non-appealable, judgment as to the Zaima Entities' claims against the Chinese Entities in the OCCC Litigation, the Trustee ~~shall~~must dismiss his claims against the Chinese Entities with prejudice (except for the Trustee's claim and interest in the interpleaded funds from the Sanilac County Circuit Court, which were subject to a prior motion to compromise~~, Doc. 77,~~ in this case ~~no. 09-65895~~(Docket # 77)).

F.     ~~T~~Upon entry of this Order, the Zaima Entities ~~shall~~ release any interest they hold in the interpleaded funds from the Sanilac County Circuit Court. The Zaima Entities ~~shall~~will make no claims on such funds, but do not act as guarantors of those funds or indemnify ~~Debtor's~~the Estate in the dispute between ~~Debtor's~~the Estate and the Chinese Entities over those funds. Further, the funds from the Sanilac County Circuit Court ~~shall~~will not be considered part of the Assignment of Litigation Proceeds. The Estate ~~shall~~will retain all claims and obligations to defend the interpleaded funds from the Sanilac County Circuit Court. The issue of these interpleaded funds ~~shall~~will not affect or delay the immediate remand of the claims referenced in subparagraph B to the Oakland County Circuit Court, and ~~shall~~will not have any claim- or issue-preclusive, res judicata, or collateral estoppel effect on the claims asserted by the Zaima Entities against the Chinese Entities in the OCCC Litigation.

G.     The Trustee ~~shall~~will permit and allow Harold Zaima's Proof of Claim No. 9 in the main Bankruptcy Case No. 09-65895-TJT as a general unsecured claim in the amount of $471,250. The Trustee will not object to said Proof of Claim ~~and will take any other reasonable action to ensure said Proof of Claim be allowed.~~

~~H.     The~~, and the claim will be deemed allowed in the amount of $471,250,

---

[3] The Court has added the phrase "of the gross amount" to this subparagraph. *See* Tr. (Docket # 145) at 12 (clarification by the Trustee's counsel during the December 7, 2016 hearing).

unless and until any party in interest with standing to do so (other than the Trustee) successfully objects to the claim.  This Order is without prejudice to the right of any other party in interest to file and prosecute an objection to the claim filed by Harold Zaima.[4]

H.    Upon entry of this Order, the Trustee/Estate shall releases the Zaima Entities from any and all claims and liabilities of any kind, whether known or unknown, that the Trustee/Estate had, has, or may have against the Zaima Entities.

I.    , except any claims based on, or to enforce, the provisions of this Order or the Settlement Agreement.

I.    To secure payment to the Trustee of the Assignment of Litigation Proceeds obtained through the OCCC Litigation, the Zaima Entities grant to the Trustee a lien and security interest in all of their claims against the Chinese Entities and the proceeds of such claims.  Such lien and security interest will be deemed perfected without the need for the Trustee to take any further action, but the Trustee may record a copy of this Order in any governmental office if he so desires.[5] If the Zaima Entities fail to pay the Estate the Assignment of Litigation Proceeds obtained through the OCCC Litigation within 30 days from the date of receipt, collection, and recovery by the Zaima Entities from the Chinese Entities, the Trustee may file an affidavit of non-compliance with the Court, and a judgment, which can be collected utilizing any and all remedies under federal or state law, shall will be entered in favor of the Trustee and against the Zaima Entities, jointly and severally in an amount equivalent to 20% (twenty percent) of any settlement or judgment funds obtained, recovered, and collected by the Zaima Entities against the Chinese Entities in the OCCC Litigation, but not to exceed $300,000 (three hundred thousand dollars), less any money already paid to the Trustee by or on behalf of the Zaima Entities, with post judgment interest accruing at the federal judgment interest rate.

J.    The Estate will retain all liabilities for all causes of action asserted by the

---

[4]  This subparagraph has been revised by the Court from the language that was in the Trustee's proposed order filed with the Motion, based on the agreement by counsel for the Trustee and counsel for the Zaima Entities during the hearing held on December 7, 2016.  (*See* Tr. (Docket # 145) at 51-52).

[5]  The Court has added the first two sentences of this subparagraph to the language that was in the Trustee's original proposed order, based on the agreement of the Trustee, the Zaima Entities, and the Chinese Entities, as expressed by their respective attorneys during the December 7, 2016 hearing.  (*See* Tr. (Docket # 145) at 69-70, 98, 105).

4

Chinese Entities against the Debtor in the Oakland County Case Adversary. The presence of such claims will not affect the immediate remand from the Bankruptcy Court to the Oakland County Circuit Court of all claims by and between the Zaima Entities and the Chinese Entities in the OCCC Litigation. But the Chinese Entities are not precluded from asserting any of their counterclaims, defenses, and offsets to any of the claims of the Zaima Entities in the OCCC Litigation.[6]

---

[6] The Court has added this subparagraph J to this Order. The first two sentences of this subparagraph are copied from the Trustee's Motion (Docket # 115 at 5, ¶ 13(G)), and are consistent with the language in ¶ 6 of the Settlement Agreement. The third sentence of this subparagraph is added by the Court, to reflect the agreement of the Trustee, the Zaima Entities, and the Chinese Entities, as expressed by their respective attorneys during the December 7, 2016 hearing. (*See* Tr. (Docket # 145) at 48-49, 85-86; *see also* Trustee's Reply (Docket # 129) at 7 n.4).

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                            Case No. 09-65895

CLEMENTS MANUFACTURING                            Chapter 7
 LIQUIDATION COMPANY, LLC,
                                                  Judge Thomas J. Tucker
                    Debtor.
_____/

## ORDER GRANTING TRUSTEE'S MOTION TO COMPROMISE
## AND SETTLE ADVERSARY NOS. 10-06123 AND 10-07341

This case is before the Court on the Trustee's motion entitled "Motion to Compromise and Settle Adversary Case Nos. 10-06123-TJT and 10-07341-TJT" (Docket # 115, the "Motion"). Notice of the Motion was served on all parties as required by Fed. R. Bankr. P. 2002 and L.B.R. 9014-1 (E.D.M.). Objections were filed, and the Court held a hearing. For the reasons stated by the Court in its written opinion filed January 26, 2018, the Court enters this Order.

IT IS ORDERED that the Trustee's Motion is granted, subject to the terms of this Order.

IT IS FURTHER ORDERED that Chapter 7 Trustee, Charles L. Wells, III, is authorized to compromise and settle all causes of action asserted by the Estate of Debtor Clements Manufacturing Liquidation Company L.L.C. (hereinafter "Trustee" or "Estate") against Harold Zaima, Zaima Family LLC, Sakoma LLC and Kensa de Honduras S. de R.L. ("Zaima Entities") in Adversary Nos. 10-06123-TJT (the "Receivables Adversary") and 10-07341-TJT (the "Oakland County Case Adversary") on all of the terms and conditions of the Settlement and Release Agreement attached as Exhibit 5 to the Trustee's Motion (the "Settlement Agreement"), but subject to the terms of this Order.[1]

IT IS FURTHER ORDERED that:

A.     All causes of action, including all counts, claims, counterclaims and cross-claims, asserted by the Trustee against the Zaima Entities that are pending in the Receivables Adversary and the Oakland County Case Adversary will be dismissed with prejudice. Such dismissal will be accomplished by the entry of appropriate orders in each of the adversary proceedings. The Trustee and the Zaima Entities must file, in each adversary proceeding, a stipulation to such dismissal, and must submit an

---

[1] To the extent of any conflicts between the Settlement Agreement and this Order, the terms of this Order will govern.

appropriate proposed dismissal order.

B.     All claims and causes of action by and between the Zaima Entities and the Chinese Entities[2] in the Oakland County Case Adversary, including all counts, claims, and causes of action asserted therein, will be remanded to the Oakland County Circuit Court and will resume in the Oakland County Circuit Court at Case No. 09-101450-CB ("OCCC Litigation"). Such remand to the Oakland County Circuit Court will be accomplished by the entry of an appropriate order in the Oakland County Case Adversary. The Trustee and the Zaima Entities must file, in the Oakland County Case Adversary, a stipulation to such remand, and must submit an appropriate proposed remand order.

C.     All causes of action asserted by the Trustee against the Chinese Entities that are pending in the Receivables Adversary and the Oakland County Case Adversary will be stayed pending entry of a final, non-appealable judgment as to the Zaima Entities' claims against the Chinese Entities in the OCCC Litigation. This stay will be accomplished by the entry of an appropriate stay order in each adversary proceeding. The Trustee and the Chinese Entities must file, in each adversary proceeding, a stipulation to such stay, and must submit an appropriate proposed stay order. The entry of the stay orders, staying all of the Trustee's claims against the Chinese Entities, will have no impact on the OCCC Litigation, and will have no claim- or issue-preclusive, res judicata, or collateral estoppel effect on the claims asserted by the Zaima Entities against the Chinese Entities in the OCCC Litigation. Further, the OCCC Litigation will be binding on the Trustee's claims.

D.     Upon entry of this Order, the Zaima Entities are deemed to assign to the Trustee/Estate 20% (twenty percent) of the gross amount[3] of any settlement or judgment funds obtained, recovered, and collected by the Zaima Entities against the Chinese Entities in the OCCC Litigation, with such assignment not to exceed $300,000 (three hundred thousand dollars) of any settlement or judgment funds so obtained, recovered, and collected ("Assignment of Litigation Proceeds").

---

[2]  As used in this Order, "Chinese Entities" means China Auto Electronics Group Ltd, Henan Tianhai Electric Co., Ltd., Tianhai Electric North America Inc., Hebi Tianhai Huanqiu Electric Company, Ltd., THB America LLC, and Tianhai Electric Group Corporation.

[3]  The Court has added the phrase "of the gross amount" to this subparagraph. *See* Tr. (Docket # 145) at 12 (clarification by the Trustee's counsel during the December 7, 2016 hearing).

2

E.    Upon entry of a final, non-appealable, judgment as to the Zaima Entities' claims against the Chinese Entities in the OCCC Litigation, the Trustee must dismiss his claims against the Chinese Entities with prejudice (except for the Trustee's claim and interest in the interpleaded funds from the Sanilac County Circuit Court, which were subject to a prior motion to compromise in this case (Docket # 77).

F.    Upon entry of this Order, the Zaima Entities release any interest they hold in the interpleaded funds from the Sanilac County Circuit Court. The Zaima Entities will make no claims on such funds, but do not act as guarantors of those funds or indemnify the Estate in the dispute between the Estate and the Chinese Entities over those funds. Further, the funds from the Sanilac County Circuit Court will not be considered part of the Assignment of Litigation Proceeds. The Estate will retain all claims and obligations to defend the interpleaded funds from the Sanilac County Circuit Court. The issue of these interpleaded funds will not affect or delay the immediate remand of the claims referenced in subparagraph B to the Oakland County Circuit Court, and will not have any claim- or issue-preclusive, res judicata, or collateral estoppel effect on the claims asserted by the Zaima Entities against the Chinese Entities in the OCCC Litigation.

G.    The Trustee will permit and allow Harold Zaima's Proof of Claim No. 9 in the main Bankruptcy Case No. 09-65895-TJT as a general unsecured claim in the amount of $471,250. The Trustee will not object to said Proof of Claim, and the claim will be deemed allowed in the amount of $471,250, unless and until any party in interest with standing to do so (other than the Trustee) successfully objects to the claim. This Order is without prejudice to the right of any other party in interest to file and prosecute an objection to the claim filed by Harold Zaima.[4]

H.    Upon entry of this Order, the Trustee/Estate releases the Zaima Entities from any and all claims and liabilities of any kind, whether known or unknown, that the Trustee/Estate had, has, or may have against the Zaima Entities, except any claims based on, or to enforce, the provisions of this Order or the Settlement Agreement.

I.    To secure payment to the Trustee of the Assignment of Litigation Proceeds obtained through the OCCC Litigation, the Zaima Entities grant to the

---

[4]  This subparagraph has been revised by the Court from the language that was in the Trustee's proposed order filed with the Motion, based on the agreement by counsel for the Trustee and counsel for the Zaima Entities during the hearing held on December 7, 2016. (*See* Tr. (Docket # 145) at 51-52).

3

Trustee a lien and security interest in all of their claims against the Chinese Entities and the proceeds of such claims. Such lien and security interest will be deemed perfected without the need for the Trustee to take any further action, but the Trustee may record a copy of this Order in any governmental office if he so desires.[5] If the Zaima Entities fail to pay the Estate the Assignment of Litigation Proceeds obtained through the OCCC Litigation within 30 days from the date of receipt, collection, and recovery by the Zaima Entities from the Chinese Entities, the Trustee may file an affidavit of non-compliance with the Court, and a judgment, which can be collected utilizing any and all remedies under federal or state law, will be entered in favor of the Trustee and against the Zaima Entities, jointly and severally in an amount equivalent to 20% (twenty percent) of any settlement or judgment funds obtained, recovered, and collected by the Zaima Entities against the Chinese Entities in the OCCC Litigation, but not to exceed $300,000 (three hundred thousand dollars), less any money already paid to the Trustee by or on behalf of the Zaima Entities, with post judgment interest accruing at the federal judgment interest rate.

J.  The Estate will retain all liabilities for all causes of action asserted by the Chinese Entities against the Debtor in the Oakland County Case Adversary. The presence of such claims will not affect the immediate remand from the Bankruptcy Court to the Oakland County Circuit Court of all claims by and between the Zaima Entities and the Chinese Entities in the OCCC Litigation. But the Chinese Entities are not precluded from asserting any of their counterclaims, defenses, and offsets to any of the claims of the Zaima Entities in the OCCC Litigation.[6]

---

[5] The Court has added the first two sentences of this subparagraph to the language that was in the Trustee's original proposed order, based on the agreement of the Trustee, the Zaima Entities, and the Chinese Entities, as expressed by their respective attorneys during the December 7, 2016 hearing. (*See* Tr. (Docket # 145) at 69-70, 98, 105).

[6] The Court has added this subparagraph J to this Order. The first two sentences of this subparagraph are copied from the Trustee's Motion (Docket # 115 at 5, ¶ 13(G)), and are consistent with the language in ¶ 6 of the Settlement Agreement. The third sentence of this subparagraph is added by the Court, to reflect the agreement of the Trustee, the Zaima Entities, and the Chinese Entities, as expressed by their respective attorneys during the December 7, 2016 hearing. (*See* Tr. (Docket # 145) at 48-49, 85-86; *see also* Trustee's Reply (Docket # 129) at 7 n.4).

4